UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MARY D. WHITE,** | : | Bankruptcy No. 08-70703 BM |
| | : | |
| Debtor | : | Chapter 7 |
| **JAMES R. WALSH, TRUSTEE OF THE BANKRUPTCY ESTAE OF MARY D. WHITE,** | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | **Doc. # 16: Trustee's Objection To Exemptions Claimed By Debtor** |
| **MARY D. WHITE,** | : | |
| | : | |
| Respondent | : | |

Appearances:    James R. Walsh, Esquire, Chapter 7 Trustee
Timothy J. Sloan, Esquire for Debtor

## MEMORANDUM OPINION

Debtor has claimed exemptions in a portion of the settlement proceeds of a lawsuit in which her husband asserted a claim for his bodily injuries and debtor asserted a claim for her loss of consortium. The exemptions were claimed pursuant to § 522(d)(5), § 522 (d)(11)(D) and § 522(d)(11)(E) of the Bankruptcy Code.

The chapter 7 trustee has objected to allowance of the exemptions taken pursuant to § 522(d)(11)(D) and § 522(d)(11)(E). He also has objected to the amount of the exemption taken pursuant to § 522(d)(5). According to the chapter 7 trustee, the total amount of the last exemption must be reduced by the amount of monthly payments debtor

has received since the commencement of her bankruptcy case and has retained for her own benefit.

The objections will be sustained for reasons set forth in this memorandum opinion.

## BACKGROUND

Debtor's husband, James White, was severely injured in October of 1989 when he fell through an opening in a roof during the course of his employment by Michael Reilly.

Seeking to recover for their respective injuries, James White and debtor commenced a civil action in state court against Reilly in October of 1991. The complaint consisted of four counts.

Count I and Count II respectively asserted claims against Reilly, personally, for negligence in failing to provide James White with a safe place to work and for the negligence of a fellow employee in failing to cover the hole in the roof without so informing James White. Count III sought to recover from Reilly directly on the theory that he had failed to purchase required workers' compensation liability insurance for James White's bodily injuries. Count IV asserted a claim for debtor's loss of consortium due to her husband's bodily injuries.

In October of 1991, defendant Reilly joined Louis Crocco, Stetler Insurance Agency and Mid-State AAA Insurance Agency as additional defendants. Reilly sought indemnification for any liability he had to James White for his bodily injuries and to debtor for her loss of consortium.

James White died in August of 1992, while the civil action was pending. He was survived by debtor, two minor children from his marriage to debtor and two adult children from an earlier marriage to someone other than debtor. Debtor Mary White subsequently was named as administrator of James Whites' estate and was substituted for him as plaintiff in the lawsuit. In addition to being a plaintiff in her own right, she served as plaintiff on behalf of her late husband's estate.

On March 14, 1996, debtor brought a petition in both of her capacities to approve a settlement with the additional defendants. Reilly was not a party to the settlement agreement, but his interests were protected by it.

The salient provisions of the settlement for purposes of the present matter are set forth in paragraph 15 of the settlement agreement.

Paragraph 15(a) provided that debtor would receive the sum of $80,200.00 in her capacity as administrator of James White's estate. Out of this latter amount, Pennsylvania Department of Public Welfare was to receive the sum of $30,689.18 to satisfy a lien it had on any recovery plaintiffs obtained in the lawsuit. A total of $49,510.82 of this sum remained after the lien was satisfied ($80,200.00 - $30,689.18 = $49,510.82).

Debtor was to receive one-half, or $24,755.41, of this remainder. Each of James White's minor children from his marriage to debtor and his adult children from a prior marriage was to receive one-eighth, or $6,188.52 of the remainder. Debtor was to deposit the shares of the minor children in an interest-bearing account, where it was to remain until the child reached the age of majority.

Paragraph 15(b) of the settlement agreement provided that, as compensation for her loss of consortium, debtor would receive $400.00 per month for the rest of her life with payments guaranteed for thirty years. In addition, she was to receive two guaranteed payments of $30,000.00 for the benefit of each of the two minor children. Paragraphs 15 (c) and (d) of the settlement agreement provided that the payments would be made in four equal annual installments of $7,500.00 beginning on each minor child's eighteenth birthday.

The settlement agreement was approved in state court, whereupon the civil action was dismissed with prejudice on March 14, 1996.

Debtor commenced this bankruptcy case by filling a voluntary chapter 7 petition on June 27, 2008[1]. A chapter 7 trustee thereafter was appointed.

The schedules accompanying the petition listed assets with a total declared value of $4,380.00 and liabilities totaling $30,927.83.

On Schedule B, debtor listed the $400.00 monthly payment she was to receive for the remainder of her life as an estate asset. The declared value of the assets was listed as "Unknown". On Schedule C, debtor claimed an exemption in 100% of the value of the

---

[1] This is not the first time debtor has been in bankruptcy. She and her husband filed a joint chapter 7 petition in April of 1991, approximately six months before they commenced the above civil action in state court. The chapter 7 trustee reported after conducting the § 341 meeting that no assets of the bankruptcy estate would be available for distribution to their creditors. Debtor and her husband received discharges on August 15, 1991. Four days later, a final decree issued and the case was closed.
  The timing of these events leads us to wonder whether debtor and her husband waited until *after* they had been relieved of their liabilities to file the above civil action, lest the lawsuit become an estate asset from which their creditors might be paid.

stream of payments in accordance with § 522(d)(11)(B) and § 522(d)(11)(E) of the Bankruptcy Code.

Debtor amended Schedule C after the chapter 7 trustee objected to the exemptions. As she had done previously, debtor claimed an exemption in 100% of the value of the stream of monthly payments in accordance with § 522(d)(11)(E). Alternatively, debtor claimed an exemption in the monthly stream of payments in the amount of $20,200.00 in accordance with § 522(d)(11)(D) and an exemption in the amount of $8.960.00 in accordance with § 522(d)(5).

The chapter7 trustee again objected to the amended exemptions on various grounds. An evidentiary hearing subsequently was held on the trustee's objection to debtor's amended exemptions.

The matter is now ready for decision.

## ANALYSIS

The subsections of the Bankruptcy Code upon which debtor's amended exemptions are based provide in relevant part as follows:

> (d) The following property may be exempted ...----....
> (5) The debtor's aggregate interest in any property, not to exceed in value $1,075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection....
> (11) The debtor's right to receive --- ....
> (D) a payment, not to exceed $20,2000, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or
> (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to

Document    Page 6 of 20

> the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

11 U.S.C. § 522(d).

An exemption claimed in bankruptcy is "presumptively valid". *State Farm Mutual Insurance Company v. Swift (Matter of Swift)*, 129 F.3d 792,799 (5th Cir. 1997). A property interest which is claimed as exempt is exempt unless a party objects. 11 U.S.C. § 522(l). Once it is exempted, the property interest is withdrawn from the bankruptcy estate for the benefit of the debtor and generally is "immunized" against liability for pre-bankruptcy debts. *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991).

The burden of production is a shifting one when an objection is raised to a claimed exemption. The objector has the initial burden of rebutting the presumptive validity of the exemption. If the objector succeeds in doing so, the burden of production shifts to the debtor to produce evidence showing that the claimed exemption is valid. If the debtor produces such evidence, the burden shifts back to the objector to produce evidence showing that the exemption is not proper. Whereas the burden of production is a shifting one, the burden of persuasion is not. It lies throughout with the party objecting to the exemption. *Walsh v. Murray*, 2008 WL2641275, *4 (W.D. Pa. 2008).

To prevail, the party objecting to a claimed exemption must prove the impropriety of the exemption by a preponderance of the evidence. *Jenkins v. Hodes (In re Hodes)*, 402 F.3d 1005, 1010 (10th Cir. 2005).

Debtor's husband asserted in the complaint in the state court action that he had suffered severe physical injuries and pain and suffering and that he had been "incapacitated from performing his work and enjoying his avocations". He claimed that his physical injuries were the result of negligence on the part of Michael Reilly and on the part of another of Reilly's employees.

Debtor asserted in Count IV of the complaint that she had been deprived of the assistance and society of her husband, "all of which has been to her great financial damage and loss".

A cause of action for loss of consortium is a claim for the loss of services, society and conjugal affection of one's spouse. The claim is derivative of and emerges from the impact of one spouse's physical injuries upon the other's marital privileges and amenities. *Darr Construction Co. v. W.C.A.B.(Walker)*, 552 Pa. 400, 408, 715 A.2d 1075, 1080 (1998).

Such a cause of action is "quite different" from a bodily injury claim. While it "stems from" the other spouse's bodily injury, a claim for loss of consortium, is a separate and distinct cause of action which is based on an injury to one's marital expectations. *Darr Construction Co.*, 552 Pa. at 408, 715 A.2d at 1080.

### § 522(d)(11)(E)

Consider first the chapter 7 trustee's objection to debtor's claimed exemption pursuant to § 522(d)(11)(E) of 100% of the stream of payments in the amount of $400.00 per month for the remainder of her life. If debtor prevails with respect to the claimed

exemption, there will be no need to consider the chapter 7 trustee's objections to the exemptions claimed under § 522(d)(11)(D) and § 522(d)(5) of the Bankruptcy Code.

In support of this objection, the chapter 7 trustee points out that paragraph 15(b) of the settlement agreement designated the stream of payments in the amount of $400.00 per month for the remainder of debtor's life as partial compensation for her loss of consortium. The stream of payments is not identified anywhere in the settlement agreement as payment for lost future earnings of James White, of whom debtor is or was a dependent.

The trustee's first objection is based on the above principle that a spouse's claim for loss of consortium is separate and distinct from the other spouse's cause of action for his or her bodily injuries. *Darr Construction Co.*, 552 Pa. at 408, 715 A.2d at 1080.

A settlement agreement is a contract and should be construed in accordance with the various canons of contract construction. *Frija v. Frija*, 780 A.2d 664, 668 (Pa. Super. 2001). When interpreting a contract, a court must seek to ascertain the intention of the parties to the contract and to give effect to that intent. *Yocca v Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 498, 854 A.2d 425, 437 (2004).

When the terms of a written contract are clear and unambiguous, the intent of the parties must be ascertained solely from the written document. *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company*, 588 Pa. 470, 481, 905 A.2d 462, 468 (2000). A contract term is ambiguous only if it is reasonably susceptible of different constructions and is capable of being understood in more than one way. Parol or extrinsic evidence is

admissible to construe a contract when it is materially ambiguous. *Insurance Adjustment Bureau*, 588 Pa. at 481, 905 A.2d at 468. Such evidence must be clear, precise and convincing or, as it sometimes is said, clear, direct and positive. *In re Herr's Estate*, 400 Pa. 90, 94, 161 A.2d 32, 34 (1960).

The language in paragraph 15(b) of the settlement agreement which provides that debtor shall receive $400.00 per month for the remainder of her life for loss of consortium is not ambiguous. In particular, it is *not* "reasonably susceptible" to the interpretation that the payments were intended to compensate debtor for the loss of future earnings of her husband on account of his bodily injuries. The "leap of logic" that would be required to reach this conclusion exceeds what we believe to be acceptable.

Perhaps realizing this about the language of the settlement agreement, debtor makes some *a priori* assertions from which she would have us conclude that the monthly payments for loss of consortium necessarily included lost future earnings of her husband.

Debtor first asserts that because spouses are liable for one another's support under 23 Pa. C.S.A. § 4321, it follows that the monthly payments for debtor's loss of consortium "would and should" consist of compensation for her husband's lost future earnings. This contention lacks merit.

Despite the requirements of 23 Pa. C.S.A. § 4312, it does not follow as a matter of logic that the parties to this settlement agreement therefore must have *intended* the monthly payments of $400.00 to compensate debtor for her husband's lost future earnings. What this statutory provision requires is not necessarily what the parties to the settlement

agreement in fact intended.  Debtor produced nothing aside from the above *a priori* assertion to show that the parties to the settlement agreement took the above statutory provision into account when drafting it.

Undeterred by the absence in the settlement agreement of any breakdown of the components (if any) comprising the monthly payments for her loss of consortium, debtor asserts that the contemplated monthly payments for her loss of consortium at the very least is "consistent with" the notion that the payments were intended to provide "aid and assistance" for debtor's ongoing support in lieu of what her husband would have provided had he not been physically injured.

While the burden of production which lies with debtor at this point is not particularly onerous, this assertion falls far short of what is required of her.  Assume for the sake of argument that such logical consistency is present here.  Such consistency does not even remotely compel the conclusion that the parties to the settlement agreement *intended* the monthly payments to debtor for loss of consortium to include compensation for her husband's lost future earnings on account of his bodily injuries.  The logical consistency of x and y does not entail that y follows from x.

We conclude in light of the foregoing that debtor has not come forward with anything indicating that the monthly payments she is scheduled to receive for the remainder of her life for her loss of consortium were intended by the parties to the settlement agreement as compensation for the loss of future earnings of debtor's husband.

The chapter 7 trustee's objection to debtor's § 522(d)(11)(E) exemption of 100% of the monthly payments she is slated to receive for the remainder of her life therefore will be sustained.

## § 522(d)(11)(D)

Debtor has claimed a $20,200.00 exemption in the monthly payments in the amount of $400.00 as provided for in the settlement agreement. The payments, debtor maintains, are "on account of" personal bodily injury to her husband, of whom she was a dependent.

The chapter 7 trustee has raised two arguments in support of his objection to this claimed exemption.

He first asserts that for purposes of § 522(d)(11)(D), the monthly payments are *not* "on account of" the personal bodily injuries her husband sustained when he fell through an opening in a roof during the course of his employment. The payments in question, the chapter 7 trustee points out, were designated in the settlement agreement as partial compensation for debtor's loss of consortium.

If we correctly understand the chapter 7 trustee's first objection, he relies on the principle that a claim for loss of consortium is *separate and distinct* under the law of Pennsylvania from a spouse's claim for his or her bodily injury. *Darr Construction Co.*, 552 Pa. at 408, 715 A. 2d at 1080.

From this the chapter 7 trustee apparently would have us conclude that debtor therefore may not exempt any portion of the above monthly payments in accordance with § 522(d)(11)(D). If a claim for loss of consortium is separate and distinct from a claim of

one's spouse for his or her bodily injury, the reasoning goes, a payment for the former is not a payment "on account of" the latter. This argument is not persuasive for a variety of reasons.

To start with, the very same sentence in *Darr Construction Co. on* which the chapter 7 trustee relies also states that a claim for loss of consortium "stems from" a spouse's claim for personal bodily injury. This phrase in our estimation is not an off-hand comment or aside to which we should attach little or no significance.

The Supreme Court of Pennsylvania has used similar relational phrases in other cases to describe the relationship between a spouse's injury claim and a claim for loss of consortium. In *Thompson v. W.C.A.B. (USF&G)*, 566 Pa. 426, 433, 781 A.2d 1146, 1154 (2001), for instance, it used the phrase "arises from" to characterize the relationship. In *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 620, 848 A.2d 113, 127 (2004), it stated that the latter is "based on" the former.

The first argument of the chapter 7 trustee relies on the principle that a claim for loss of consortium is separate and distinct from a spouse's bodily injury claim while disregarding the principle that in a sense they also are related to one another. This being so, we conclude that, to the extent Pennsylvania law is relevant here, payment for a claim for the latter in some respect can exist under Pennsylvania law "on account of" a claim for the former.

What is more important, the chapter 7 trustee's reliance on state law to prove his claim is misguided. How to construe the phrase "on account of" as it appears in § 522(d)

(11)(D) is a question of federal rather than state law. Federal case law compellingly indicates that the monthly payments for debtor's loss of consortium are "on account of" her husband's bodily injury claim for bankruptcy exemption purposes. In *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999), the United States Supreme Court was called upon to construe the phrase "on account of" as it appears in § 1129(b)(2)(B)(ii) of the Bankruptcy Code.

The Supreme Court preliminarily noted that the phrase "on account of" appears in numerous other provisions of the Bankruptcy. It appears, for instance, in § 522(d)(10)(E)(ii), § 547(b)(2), § 547(c)(4)(B) and § 1111(b)(2)(A)(i)(II). *Bank of America*, 526 U.S. at 450-51, 119 S.Ct. at 1420. Subsection 522(d)(11)(E), the Bankruptcy Code provision which is at issue here, was not included in the list.

Applying the "commonsense rule" that a given term "is meant to carry a given concept in a single statute", the Supreme Court concluded that the phrase "on account" appearing in § 1129(b)(2)(B)(ii) means "because of" and denotes a causal relationship between two things. *Id.* The latter phrase may be substituted for the former without a material change in meaning.

Because § 522(d)(10)((E)(ii) was not at issue in *Bank of America*, the proposition that the term "on account of" appearing therein means "because of", arguably was *dictum*. The United Supreme Court, however, specifically addressed and decided this issue in *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005).

Applying the above "commonsense rule" referred to in *Bank of America*, and after concluding that the context of § 522(d)(10(E)(ii) did not suggest that "Congress deviated from the term's ordinary meaning", the Supreme Court concluded that the phrase "on account of" found in that provision means "because of". *Rousey*, 541 U.S. at 326-27, 125 S.Ct. at 1566.

We know of no reason, contextual or otherwise, why the reasoning set forth in *Rousey* would not apply to the phrase "on account of" found in § 522(d)(11)(D). The phrase "because of" may be substituted for the phrase "on account of" without any material change in meaning.

Applying this result to the present matter, it follows that debtor's right to receive the above monthly payments for her loss of consortium *is* "on account of" her husband's bodily injuries. Debtor was compensated for her resulting loss of consortium because of James White's bodily injuries.

Concluding that the chapter 7 trustee's first ground for objecting to debtor's § 522 (d)(11)(D) exemption lacks merit does not mean, however, that his objection to this specific exemption must be overruled. The chapter 7 trustee's second argument in support of his objection to debtor's § 522(d)(11)(E) exemption fares better that the first.

Different tenses of the verb "to be" are used in various subparts of § 522(d)(11), which provides as follows:

- 14 -

>  (d) The following property may be exempted under subsection (b)(2) of this section -- ....
>  >  (11) The debtor's right to receive ... -- ....
>  >  >  (B) a payment on account of the wrongful death of an individual of whom the debtor *was* a dependent, to the extent reasonably necessary for the support of the debtor or any dependent of the debtor;...
>  >  >  (D) a payment, not to exceed $20,200, on account of personal bodily injury, not including pain and suffering or actual pecuniary loss, of the debtor or an individual of whom the debtor *is* a dependent; or
>  >  >  (E) a payment in compensation of the loss of future earnings of the debtor or an individual of whom the debtor *is or was* a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. (Emphasis added.)

11 U.S.C. § 522(d)(11).

Subsection 522(d)(11)(B) utilizes the *past* tense of the verb "to be". The relevant prepositional phrase is "of whom the debtor was a dependent". Subsection 522(d)(11)(D) utilizes the *present* tense of the verb "to be". The relevant prepositional phrase is "of whom the debtor is a dependent". Subsection 522(d)(11)(E), utilizes a disjunction of the *present* and *past* tenses of the verb "to be". The relevant prepositional phrase is "of whom the debtor is or was a dependent".

Congress' use of a specific verb is significant when construing a statute. *United States v. Wilson*, 503 U.S. 329, 333, 112 S.Ct. 1351, 1354, 117 L.Ed.2d 593 (1992). One who ignores or takes verb tense lightly when construing a federal statute does so at his or her peril.

It is not disputed that debtor's husband, James White, died approximately sixteen years before debtor commenced the present bankruptcy case. She was (past tense) a dependent of James White prior to his death, but ceased being so (present tense) when he died.

The chapter 7 trustee relies on the tense of the verb "to be" in formulating his second argument in support of his objection to debtor's § 522(d)(11)(D) exemption. Debtor unquestionably was (present tense) a dependent of James White both when he suffered an on-the-job bodily injury and when he and debtor commenced the above civil action in state court against Michael Reilly. Debtor, however, was not (present tense) a dependent of James White when she commenced this bankruptcy case.

Left unsaid by the chapter 7 trustee is the relevant time at which debtor must be (present tense) a dependent of James White for the proposition that she is his dependent to be true for purposes of § 522(d)(11)(D). If the relevant time is when debtor commenced this bankruptcy case, the proposition that debtor is (present tense) a dependent of James White is not true for purposes of the provision.

Debtor fares no better in this regard than does the chapter 7 trustee. She asserts in a wholly conclusory fashion that the relevant time at which she must be (present tense) a dependent of James White for purposes of § 522(d)(11)(D) is when he was injured in October of 1989.

The parties have left it to the court to determine for itself the relevant time at which debtor must be (present tense) a dependent of James White to qualify as his dependent for purposes of § 522(d)(11)(D).

Neither the express language of § 522(d)(11)(D) nor its legislative history provides any illumination in this regard. The answer lies in the purpose exemptions serve in bankruptcy and how this purpose is realized.

It is "hornbook law" that exemptions are determined *as of when the bankruptcy case commenced*. Whether a debtor's exemption of a property interest is allowable in light of an objection thereto must be determined "as of" the time the bankruptcy petition was filed. A bankruptcy court must take a "retrospective snapshot" of the law and the facts as they were at that time. *Canfield v. Orso (In re Orso)*, 283 F.3d 686, 691-92 (5th Cir. 2002).

One of the fundamental purposes of the Bankruptcy Code is "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt'". *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 658, 112 L.Ed.2d 1230 (1991) (quoting *Local Loan Company v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1924)). Put another way, providing a debtor with a "fresh start" is a fundamental objective of bankruptcy.

Providing a debtor in bankruptcy with a "fresh start" requires a finality which enables a debtor in bankruptcy "to rebuild his [or her] life without fear of lingering creditors". *Pasquina v. Cunningham (In re Cunningham)*, 513 F.3d 318, 342 (1st Cir.

2008). Achieving such finality depends on the facts and the law *as they were on the petition date.* Relying on the facts and the law as they were at some time other than the petition date would threaten to undermine such finality.

These considerations support the conclusion that debtor was (present tense) not a dependent as of the petition date. She instead was (past tense) a dependent of his at that specific time.

We conclude in light of the foregoing that the chapter 7 trustee's objection to debtor's § 522(d)(11)(D) exemption of $20,200.00 of the stream of payments she is scheduled to receive for the remainder of her life must be sustained. Although the payments are "on account of" her husband's bodily injuries, debtor does not qualify as his dependent within the meaning of § 522(d)(11)(D).

### § 522(d)(5)

Debtor also has claimed an exemption totaling $8,960.00 in the stream of payments in the amount of $400.00 per month she is scheduled to receive for the remainder of her life.

The chapter 7 trustee does not object *per se* to the exemption, but instead has objected to the amount of the exemption. He asserts that debtor continued receiving the monthly payments after filing her bankruptcy petition and has retained them for her own benefit and use. The allowed amount of the exemption debtor has claimed under this provision, the chapter 7 trustee asserts, should be reduced by the amount of the payments she has received since the petition date and has retained for her own benefit and use.

Debtor has not denied that she continues to the present time to receive the monthly payments and has retained and used them for her own benefit and has given no reason why the amount of this exemption should not be reduced accordingly.

Debtor's § 522(d)(5) exemption therefore will be allowed, but will be reduced by the total amount of such payments she has received (and continues to receive) since the petition date. She will be directed to provide the chapter 7 trustee an accounting of the payments received.

An appropriate order shall issue.

8-10-09

**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

**FILED**

AUG 1 0 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| MARY D. WHITE, | Bankruptcy No. 08-70703 BM |
| Debtor | Chapter 7 |
| JAMES R. WALSH, TRUSTEE OF THE BANKRUPTCY ESTAE OF MARY D. WHITE, | |
| Movant | |
| v. | Doc. # 16: Trustee's Objection To Exemptions Claimed By Debtor |
| MARY D. WHITE, | |
| Respondent | |

## ORDER OF COURT

AND NOW, this 10th day of August, 2009, for reasons set forth in the above memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** as follows:

(1) The objections of the chapter 7 trustee to the exemptions debtor claimed pursuant to 11 U.S.C. § 522(d)(11)(D) and § 522(d)(11)(E) of the Bankruptcy Code **SHALL** be and hereby are **SUSTAINED**. Said exemptions are **DISALLOWED** in their entirety.

(2) The objection of the chapter 7 trustee to the exemption claimed by debtor pursuant to § 522(d)(5) **SHALL** be and hereby is **SUSTAINED**. Said exemption is **ALLOWED** but **SHALL** be **REDUCED** by the amount of the monthly payments for loss of consortium debtor has received and retained since the petition date.

(3) Debtor **SHALL** provide the chapter 7 trustee with an **ACCOUNTING** of the payments she has received since the petition date within fifteen (15) days of the date of this order.

It is **SO ORDERED**.

FILED

AUG 10 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

BERNARD MARKOVITZ
U.S. Bankruptcy Judge

cm: Parties in interest